**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2456-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JERMAINE M. MILLS,
a/k/a JERMAINE A. MILLS,
JERMAINE A. MOLTS, and
JERMAINE M. MANN,

     Defendant-Appellant.

_____

Submitted July 14, 2026 – Decided July 30, 2026

Before Judges Gilson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment Nos. 15-02-0114, 15-04-0303 and 16-11-0947.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Anthony J. Vecchio, Designated Counsel, on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (James E. Moore, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jermaine Mills pled guilty to first-degree robbery, N.J.S.A. 2C:15-1, and two counts of third-degree witness tampering, N.J.S.A. 2C:28-5(a)(1). He was sentenced to seventeen years in prison with periods of parole ineligibility and parole supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

He appeals from an August 9, 2021 order denying his petition for post-conviction relief (PCR). Having reviewed defendant's arguments, the record, and the law, we affirm.

I.

On September 21, 2014, Justin Stanfield was robbed while he was at the home of Raymond Stacey. Stanfield had been temporarily staying with Stacey and had been selling narcotics from Stacey's home. Through investigations and witness interviews, the State came to believe that defendant, Kristopher Hill, Destyn Harper, Shawn Shuman, Desiree Sangillo, and Stacey conspired to rob Stanfield.

On the day of the robbery, Stacey was home and defendant, Hill, Harper, Shuman, and Sangillo came to Stacey's home. While accounts of what happened varied, the evidence showed Stanfield was robbed and a wallet and drugs were

taken from him. The evidence also established that a handgun was used during the robbery.

Just after the robbery, Stanfield told police defendant had grabbed and held him, while Harper pulled out a gun and threatened him. He also explained that he was punched and struck with the gun. Stanfield was taken to a hospital and received treatment for his injuries.

In a statement Harper provided, he told police that he and defendant had robbed Stanfield, but he was the one who restrained Stanfield while defendant held the gun. Harper also reported defendant had struck Stanfield with the gun and punched Stanfield.

Defendant was initially indicted for crimes related to the robbery in December 2014. Two months later, in February 2015, a grand jury returned a superseding Indictment No. 15-02-00114-I, charging defendant with various crimes related to the robbery of Standfield. Co-defendants Harper, Hill, Shuman, and Sangillo were also charged in that indictment. The charges against defendant included first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(a)(1); third-degree theft, N.J.S.A. 2C:20-3(a); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); and weapons and drug offenses. In a separate

A-2456-23

indictment, Stacey was charged with robbery and conspiracy to commit the robbery of Stanfield.

In January 2015, Harper signed an affidavit retracting the statements he had given to the police shortly after the robbery. Approximately six months later, in July 2015, a letter signed by Stanfield was sent to the court, changing certain statements Stansfield had previously given to the police regarding defendant's participation in and use of force during the robbery.

The following year, however, both Harper and Stanfield admitted their retraction and changes were not true. In that regard, in September 2016, Harper pled guilty to first-degree robbery of Stanfield. During his plea, Harper testified under oath that he signed the January 2015 affidavit after receiving a note from defendant urging him to retract his initial statement. He also admitted that the retraction was a lie.

Similarly, in September 2016, Stanfield pled guilty to an unrelated violation of probation. During sentencing on that plea, Stanfield admitted his July 2015 changes were not true. He explained that while he had been incarcerated, other inmates informed him defendant wanted him to change his statement, and he signed the July 2015 letter because he felt threatened. Stanfield also testified that defendant had participated in robbing him.

A-2456-23

On November 15, 2016, a grand jury returned Indictment No. 16-11-0947-I charging defendant with first-degree witness tampering related to Stanfield, N.J.S.A. 2C:28-5(a)(1), and third-degree witness tampering related to Harper, N.J.S.A. 2C:28-5(a)(1). Meanwhile, the other co-defendants Hill, Stacey, Sangillo, and Shuman all pled guilty to various crimes related to the robbery of Stanfield.

Defendant was initially represented by an attorney assigned by the Public Defender's Office. That attorney represented defendant from approximately September 2014 through May 2016. In May 2016, defendant retained a private attorney, who represented him through 2017.

On April 12, 2017, defendant pled guilty to first-degree robbery under Indictment No. 15-02-00114-I; and two counts of third-degree witness tampering under Indictment No. 16-11-00947-I. Two months later, on June 23, 2017, defendant was sentenced. On the robbery conviction he was sentenced to seventeen years in prison subject to NERA. On each of the witness tampering convictions, he was sentenced to three years in prison, and those sentences were run concurrent to each other and to the robbery sentence.

5

Defendant had also been indicted in 2015 under Indictment No. 15-04-00303-I, for third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1). That charge was dismissed shortly after defendant was sentenced on his pleas.

Defendant filed a direct appeal, challenging only his sentence. We rejected his arguments and affirmed his sentence. State v. Mills, No. A-0704-17 (App. Div. June 4, 2018).

The following year in December 2018, defendant filed a PCR petition, and he was assigned counsel. Thereafter, on June 25, 2021, the PCR court heard oral argument on defendant's petition.

On August 9, 2021, the PCR court issued a written opinion and order denying defendant's petition without an evidentiary hearing. Defendant made three arguments before the PCR court. First, he claimed that his trial counsel had provided him ineffective assistance by failing to discuss the details of his case, the evidence, or the discovery. Second, he contended that the State had procured perjured testimony and made misrepresentations to the grand jury in seeking indictments against him. Finally, he contended that he was not given timely notice of and discovery of Stanfield's September 2016 plea and Stanfield's testimony concerning his retracted statement.

6

The PCR court reviewed and rejected those arguments. The court first determined that defendant had failed to establish a prima facie showing of ineffective assistance of trial counsel. The court reasoned defendant had made generalized claims regarding his trial counsel's failures, but his claims were inconsistent with his testimony when he pled guilty.

Second, the court determined that there was no evidence showing that the State presented perjured testimony or misrepresentations to the grand juries. Instead, the PCR court reasoned that the State clearly explained that its investigation was ongoing, and it had learned additional facts between the time it obtained the first indictment and the time that it obtained the superseding indictment. Thus, the PCR court concluded that there was no evidence that the State improperly procured the grand jury indictments.

Third, the court determined there was no Brady violation. See Brady v. Maryland, 373 U.S. 83 (1963). The rule laid down in Brady requires the State to provide a criminal defendant with exculpatory evidence known to the State. 373 U.S. at 86-87; see also R. 3:13-3 (defining prosecutors' duties in New Jersey to provide discovery, including exculpatory evidence). The PCR court rejected defendant's argument that the State had an obligation to notify him of Stanfield's

plea because Stanfield pled guilty to a violation of probation that was not related to the robbery of Stanfield or any charges against defendant.

Defendant now appeals from the order denying his PCR petition.

## II.

On appeal, defendant articulates his arguments as follows:

> I. THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING ON DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, AND A HEARING IS NECESSARY TO DETERMINE WHETHER A NEW TRIAL IS WARRANTED.
>
> A. TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND ADVISE DEFENDANT ABOUT CRITICAL EXCULPATORY EVIDENCE WAS CONSTITUTIONALLY DEFICIENT AND PREJUDICAL.
>
> B. COUNSEL WAS INEFFECTIVE IN PERMITTING DEFENDANT TO PLEAD GUILTY TO WITNESS TAMPERING WITHOUT A FACTUAL BASIS.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42,

8

58 (1987) (adopting the Strickland two-prong test in New Jersey). Under prong one, a defendant must establish "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

When a PCR court does not conduct an evidentiary hearing, appellate courts "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 421 (2004); see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (applying a de novo standard of review). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

A.   The Alleged Ineffective Assistance.

Before us, defendant makes two primary arguments. First, he contends that his trial counsel was ineffective in failing to advise him about "critical exculpatory evidence." In that regard, he contends that when co-defendant Harper pled guilty in September 2016, Harper admitted that he was the one who

held the gun during the robbery. Thus, defendant argues Harper's admission contradicted the State's theory that defendant had wielded the gun during the robbery. Defendant also alleges that Stanfield provided multiple "irreconcilable accounts of the incident" and those inconsistent statements "constituted powerful exculpatory and impeachment evidence."

The record does not support defendant's allegations that his trial counsel was ineffective concerning the inconsistent statements. Critically, defendant pled guilty. Under oath, he testified he participated in the robbery of Stanfield, that force was used against Stanfield, including choking Stanfield, Harper also participated in the robbery and "possessed a weapon," and property was taken from Stanfield. In short, the plea entered by Harper was consistent with the plea entered by defendant because they both admitted Harper held the gun.

There was also nothing inconsistent in the testimony given by Stanfield when he pled guilty. Indeed, consistent with defendant's admission, Stanfield testified defendant had participated in the robbery. Like the testimony given by Harper, Stanfield's explanation of his false retraction, was strong evidence of defendant's witness tampering.

Furthermore, the record is clear that both defendant and his counsel were aware of the pleas and testimony given by Harper and Stanfield. Indeed, the

A-2456-23

guilty pleas by all co-defendants created compelling reasons for defendant's pleas. Consequently, there was no showing that defendant's counsel had been ineffective.

Moreover, there was no showing of prejudice to defendant. In that regard, defendant acknowledged under oath he had carefully reviewed the plea agreement, he was pleading guilty because he was guilty, and he was doing it freely and voluntarily. Defendant also testified that his trial counsel had gone over the plea agreement with him and that he was satisfied with counsel's representation.

In his second argument, defendant contends that his trial counsel was ineffective by allowing him to plead guilty to two counts of witness tampering without an adequate factual basis. Specifically, he asserts he never admitted that he threatened, coerced, or induced either Harper or Stanfield to make false retractions of their earlier statements. Defendant's plea testimony rebuts those contentions.

In pleading guilty to third-degree witness tampering concerning Stanfield, defendant admitted he knew Stanfield had signed a letter recanting his earlier incrimination of defendant, knew Stanfield later testified he received the recanting letter with the understanding that it came from defendant, was given a

11

copy of the letter, and provided Stanfield's recantation letter to his attorney, who sent it to the court. Defendant then admitted he knew Stanfield's recantation "was incorrect."

Regarding Harper, defendant admitted that he knew Harper had provided a statement to the police shortly after the robbery explaining defendant had been involved with the robbery, defendant wrote to Harper encouraging him to change his statement, Harper then recanted his earlier statement, and that recantation was inconsistent with defendant's own admission that he was involved in the robbery.

In short, defendant admitted that he knew both Stanfield and Harper had made false recantations and he had caused those recantations to be submitted to the court. Accordingly, defendant admitted the essential element of third-degree witness tampering because he "knowingly engage[d] in conduct which a reasonable person would believe would cause a witness or informant to [] [t]estify or inform falsely[.]" N.J.S.A. 2C:28-5(a)(1).

B.    No Need for an Evidentiary Hearing.

A defendant is entitled to an evidentiary hearing on a PCR petition only if: (1) he or she establishes "a prima facie case in support of [PCR]," (2) there are "material issues of disputed fact that cannot be resolved by reference to the

existing record," and (3) "an evidentiary hearing is necessary to resolve the claims for relief." State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)).  In making that showing, a defendant must "demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits."  State v. Marshall, 148 N.J. 89, 158 (1997); see also R. 3:22-10(b).

As our de novo review has established, defendant did not make a prima facie showing that his trial counsel was ineffective.  Moreover, defendant failed to show a likelihood that his claims would succeed on the merits.  Accordingly, the PCR court did not abuse its discretion in denying defendant an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M. C. Hanley*

Clerk of the Appellate Division

A-2456-23